UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CARLTON WEST,

               Plaintiff,                      Case No. 2:13-cv-118

v.                                        Honorable R. Allan Edgar

UNKNOWN PARTY #1, et al.,

               Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Unknown Parties ##1-11, Patrikus, Ahola, Barry, Bellenger, Bemis, Borgen, Bouchard, Warden Capello, Comfort, Curley, Delene, Corrections Officer [female] Dewar, Assistant Resident Unit Supervisor [male] Dewar, Dove, Dube, Etelamaki, Goodreau, Gransinger, Hammel, Heyns, Hieteko, Hill, Holma, Huthaa, Jacobson, Jondreau, Karppinen, Kulie,

LaChance, LeClaire, Lake, Macintyre, McCann, Martin, Meyers, Morgan, Petajaa, Place, Perry, Rule, Sackett, Skytta, Snow, Tollefson, Snyder, Tribbley, Turner, Wealton, Walden, Wickstrom and Yankovich. The Court will serve the complaint against Defendants Truesdell, Koskinen, Dove, Erkkila, Brommenschenckle, Hapaala, Minnerick, and Joyal.

## **Discussion**

I.     <u>Factual allegations</u>

Plaintiff Carlton West, a state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Unknown Parties ##1-11, Corrections Officer Patrikus, Corrections Officer Ahola, Food Service Director Barry, Corrections Officer Bellenger, Corrections Officer Bemis, Corrections Officer Borgen, Corrections Officer Brommenschenckle, Librarian Bouchard, Warden Capello, Dr. Comfort, Warden Curley, Assistant Deputy Warden Delene, Corrections Officer [female] Dewar, Assistant Resident Unit Supervisor [male] Dewar, Librarian Dube, Assistant Resident Unit Supervisor Etelamaki, Corrections Officer Erkkila, Corrections Officer Goodreau, Sergeant Gransinger, Resident Unit Manager Hammel, Corrections Officer Hapaala, MDOC Director Daniel H. Heyns, Corrections Officer Hieteko, Corrections Officer Hill, Corrections Officer Holma, Corrections Officer Huthaa, Corrections Officer Jacobson, Assistant Deputy Warden Jondreau, Corrections Officer Joyal, Assistant Resident Unit Supervisor Karppinen, Sergeant Koskinen, Corrections Officer Kulie, Corrections Officer LaChance, Assistant Resident Unit Supervisor LeClaire, Corrections Officer Lake, Corrections Officer Macintyre, Captain McCann, Special Acts Director Bill Martin, Corrections Officer Meyers, Corrections Officer Minnerick, Corrections Officer Morgan, Inspector Petajaa, Warden Place, Lieutenant Perry, Corrections Officer Rule, Assistant

Resident Unit Supervisor Sackett, Corrections Officer Skytta, Corrections Officer Snow, Corrections Officer Tollefson, Chaplain Snyder, Warden Tribbley, Corrections Officer Truesdell, Corrections Officer Turner, Corrections Officer Wealton, Corrections Officer Walden, Sergeant Wickstrom and Lieutenant Yankovich.

In his complaint, Plaintiff states that he was transferred from the Marquette Branch Prison (MBP) to the Baraga Maximum Correctional Facility (AMF), on April 8, 2010, after Plaintiff assaulted Corrections Officers at MBP. Much of Plaintiff's 137 page complaint, as well as the attached 57 pages of affidavits, details his complaints about the handling of his grievances, the failure to provide him with all the legal materials he requested from the law library, and the repeated harassment by prison staff. Plaintiff's complaint chronicles his experiences over the past three years in excruciating detail, including the claims asserted in each grievance filed, the responses to those grievances, every harassing statement or action by Defendants, and numerous minor ailments suffered by Plaintiff.

Plaintiff claims that when he arrived at AMF, he was assaulted by Defendant Truesdell and Unknown Party #3. Plaintiff states that Defendant Koskinen was present and insulted him, saying that Plaintiff was one of the "Black Power niggers." Defendant Koskinen forcibly cut his hair, which Plaintiff wore in long dreadlocks, falsely stating that Plaintiff had razors hidden in his hair.

After the assault, Defendant Delene refused to contact the Michigan State Police, despite Plaintiff's obvious injuries. Plaintiff was placed in segregation and Defendants Dove, Erkkila, Brommenschenkel, Hapaala, Minnerick and Joyal deprived Plaintiff of his meal trays until dinner on April 12, 2010. When Plaintiff did begin to receive trays, they were not compliant with

his Rastafarian diet, so Plaintiff was only able to eat the side dishes. Each time Plaintiff requested help from Corrections Officers, they would simply say "Lindberg" [the staff member Plaintiff had assaulted at MBP] and walk away. Plaintiff states that the psychologist Tonia Wolock told him that she had seen the way Plaintiff was brought in, and that it was all on the cameras. During Plaintiff's 30 day evaluation by Wolock, she stated that Plaintiff had really been bucking and resisting staff, and that he should not have been doing that.

On April 12, 2010, Plaintiff was given his property and noticed that some was missing, including pleadings to be filed with the Sixth Circuit, legal books, a pending lawsuit, and child custody and support transcripts. Plaintiff was never given a change of clothes or shower shoes, and only had one bedroll. On April 13, 2010, Defendant Rule reviewed a Notice of Intent (NOI) with Plaintiff regarding his television, which had missing buttons and no picture. Defendant Rule also reviewed a second NOI with Plaintiff, which related to five books, twenty-two cassettes, one case, one pair of headphones, one coat, and one radio. Plaintiff told Defendant Rule that he had not been given a property receipt and Defendant Rule said he would check on it. Plaintiff was told that his typewriter had been sent to AMF separately and that it would arrive later. Plaintiff was subsequently informed by Defendant Sackett that his typewriter and television were both broken and that he could have them sent out for repairs at his expense. Plaintiff was also told that his tape player numbers had been altered, rendering it contraband, that the headphones were in numerous pieces, and that the winter jacket did not have Plaintiff's prisoner number on it. Plaintiff was given 30 days to order a new tape player before his cassette tapes would be destroyed. The five books were returned to Plaintiff. Plaintiff's grievance regarding the disposition of his property and the subsequent appeals were denied. On August 6, 2010, Plaintiff was notified by Defendants Rule and

Kulie that he had abandoned property, including 22 cassette tapes, a tape case, a tape player, headphones and a winter jacket, which would be disposed of in accordance with MDOC policy. On October 10, 2010, Defendants Rule and Kulie informed Plaintiff that if he did not submit money to have his typewriter sent out for repairs within 10 days, it would be considered abandoned and would be subject to disposal.

On April 19, 2010, Defendant Brommenschenkel took a letter and health care request from Plaintiff's cell. Plaintiff claims that he never received a response from either item and asserts that Defendant Brommenschenkel must not have sent the items. On April 21, 2010, Defendant Hammel wrote "no pen, no paper" on the outside of Plaintiff's door. Defendant Minnerick subsequently wiped the message off of Plaintiff's door with a paper towel. Plaintiff asserts that he has been subjected to verbal threats and harassment by Defendants Turner, Huthaa, and Sackett, and that Defendant Turner has occasionally refused to allow Plaintiff yard time and failed to deliver the Plaintiff's entire "meal fruit option." Plaintiff states that each time he asked Defendants Ahola and Huthaa if he could have his property, they would mention Officer Lindberg and deny his requests.

On October 11, 2010, Plaintiff received the State Issued Quartermaster (clothing) as "catch-up property." Plaintiff asked Defendant Karppinen why he was not also receiving his legal property and was told to kite the property room. In responding to Plaintiff's kite, Defendant Kulie informed Plaintiff that he had received all the property that had been delivered to AMF. Plaintiff subsequently filed a grievance, which was denied at each level.

Plaintiff claims that with regard to a habeas case in this court, No. 1:98-cv-557, Defendant Karppinen refused to give him needed photocopies, which prejudiced his attempt to file a second and / or successive habeas corpus petition. Plaintiff also claims that his mail was being

interfered with by Defendants. However, a review of this case shows that Plaintiff's motion to file a second or successive petition was denied because he failed to offer any evidence that would prove that he was factually innocent of the crime for which he was convicted. *West v. Withrow*, No. 1:98-cv-557 (W.D. Mich. 2001) (docket #48).

Plaintiff claims that some of the missing material was necessary to show that he was entitled to file a second / successive habeas corpus petition for a conviction from the early 1990s. Plaintiff claims that he sought an extension of time to request permission to file a second / successive habeas corpus petition, which was granted by the Sixth Circuit Court of Appeals on April 19, 2010. Plaintiff was given until September 20, 2010, to file the requisite application. The Michigan Court of Appeals stated that the cost for copying Plaintiff's file in Appeal No. 175678 would be $29.50, and the cost for copying Appeal No. 290929 would be $144.00. The Michigan Supreme Court informed Plaintiff that the cost of copying his file in Case No. 139497 would be $44.50. On May 5, 2010, the Genessee County Clerk advised Plaintiff that the cost of copying his criminal record would be $1879.00. On May 10, 2010, the U.S. District Court for the Western District of Michigan advised Plaintiff that the cost of retrieving the record from archives in Case No. 1:98-cv-557 would be $45.00, and that there would be an additional cost for copying the record. Plaintiff states that he was unable to obtain information previously given to him by his niece, who had made a Freedom of Information Act (FOIA) request in order to obtain it despite many requests to numerous court and public officials. On August 11, 2011, the Sixth Circuit Court of Appeals issued an order denying Plaintiff's motion to file a second and / or successive habeas corpus petition.

Plaintiff claims that on various dates in 2010, money was taken out of his account for payment of filing fees, leaving him with only $5.00 for personal use, instead of the $10.00 he was

supposed to have. Plaintiff filed a grievance, to no avail. Plaintiff also claims that in 2011, he had grievances and grievance appeals wrongly rejected as being untimely. Plaintiff claims that since being transferred to AMF, he has not received much of the mail sent to him by his family. Plaintiff states that at least one person informed him that she had received an envelope from Plaintiff with no letter or other content inside. Plaintiff filed a grievance regarding the interference with his mail. In the grievance response, Defendants Karppinen and LeClaire stated that Plaintiff's mail was properly sealed by prison staff and that once the mail leaves the prison, it is no longer the responsibility of the facility. Plaintiff's appeals were denied.

Plaintiff claims that he was concerned with his weight, despite the fact that his Body Mass Index was within the normal range. Plaintiff states that Nurse Hulkoff told him to eat everything on his plate, including the butter, and that he would be assured of receiving enough calories. Plaintiff further states that he was told by the dietitian that he had borderline high cholesterol and should reduce the amount of dietary fat he consumes in order to control his LDL levels. Plaintiff contends that if he ate everything on his plate, he would not be following the dietary instruction and would be risking high cholesterol.

On March 15, 2011, Plaintiff was escorted to health services to see Defendant Comfort, who told Plaintiff that he would be scheduled for x-rays and would be prescribed Naproxen. On April 1, 2011, Plaintiff was x-rayed while in chains and claims that while he was being taking to health services, Defendants Wheaton, Dove and Koskinen harassed Plaintiff regarding the haircut Defendant Koskinen had given Plaintiff on his arrival at the prison. Defendant Koskinen stated that he still had Plaintiff's hair. On April 6, 2011, Plaintiff questioned Defendant Comfort about the results of his x-rays. Defendant Comfort told Plaintiff that his shoulder problems

were the result of a deformity he had been born with, and that if the Naproxen did not work, he could have a steroid injection. On April 7, 2011, Plaintiff requested a copy of his x-rays. Plaintiff received a copy of the x-ray reports, which indicated that the x-rays were of Plaintiff's spine and of his left shoulder. Plaintiff's left shoulder appeared to have a "type III acromion which causes mild narrowing of the supraspinatus outlet and may give rise to mild impingement."

Plaintiff claims that on November 29, 2012, after sporadically seeing flashes of light "inside the top left side of his head," and suffering from sharp shooting pains in the corner of his left eye, he made a health care request. Plaintiff was subsequently examined by an optometrist, who found no damage to Plaintiff's eye.

Plaintiff claims that during his incarceration, Defendants Goodreau, Hill and Jacobson have verbally harassed him in an attempt to get him to lose his temper so that they could implement yard restrictions. Plaintiff further claims that Defendants Bemis, Lachance, Skytta, Holma, Leclaire, LaChance, Dove, Turner, Ahola, and Dewar each engaged in verbal harassment, as well as harassing behavior such as removing items from Plaintiff's tray, and placing pieces of plastic and metal in Plaintiff's food. Plaintiff claims that Defendants told him that they are seeking to have him removed from his vegetarian diet. Plaintiff also claims that Defendants stepped on his heels during transport to and from yard, and that at one point the water in his sink was stuck on for seven days and his law books were not being delivered. Plaintiff claims that library staff send the wrong materials.

Plaintiff states that he has been improperly designated as a member of a Security Threat Group (STG) II because his tattoos are not gang related, but are based on lyrics from songs, as well as from the Bible. Plaintiff further claims that he requested a "vital" (meaning natural) diet as part of his Rastafarian beliefs, but that his request was denied by Defendant Snyder on April 19,

2012. Plaintiff was told that the cost of feeding him in accordance with his faith would be to expensive. However, as noted above, Plaintiff stated earlier in his complaint that he is receiving a vegetarian diet as required by his religious beliefs.

Plaintiff states that Defendants' conduct violated his rights under the First and Eighth Amendments and seeks damages, as well as declaratory and injunctive relief.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants Rule, Sackett, and Kulie deprived him of his property following his transfer to AMF. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Jul. 9, 2012). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's claims against Defendants Rule, Kulie and Sackett for the loss of his property will be dismissed.

Plaintiff states that he was subjected to verbal harassment by Defendants Hammel, Turner, Huthaa, Sackett, Ahola, Goodreau, Hill, Jacobson, Bemis, Lachance, Skytta, Holma, LeClaire, LaChance, Dove, Wealton, Koskinen, and Dewar on various occasions, as well as to other harassment such as removing items from Plaintiff's tray and placing pieces of plastic and metal in his food. Plaintiff further states that Defendants sometimes stepped on his heels during transport to and from the yard, and that one time the water in his sink was stuck on for seven days. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards

of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985).

Moreover, Plaintiff's allegations that Defendants sometimes removed items from Plaintiff's tray and placed pieces of plastic and metal in Plaintiff's food, that they stepped on his heels during transport to and from the yard, and that one time the water in his sink was stuck on for seven days do not rise to the level of an Eighth Amendment violation. Therefore, Defendants Hammel, Turner, Huthaa, Sackett, Ahola, Goodreau, Hill, Jacobson, Bemis, Lachance, Skytta, Holma, Leclaire, LaChance, and Dewar are entitled to dismissal of these claims.

In addition, Plaintiff's allegations regarding his dietary concerns do not rise to the level of an Eighth Amendment violation, because despite the fact that Plaintiff was concerned with maintaining his weight, he concedes that his Body Mass Index was within the normal range. In addition, the fact that Nurse Hulkoff told him to eat everything on his plate, including the butter, even though Plaintiff's LDL levels were borderline, does not constitute an Eighth Amendment deprivation.

Plaintiff claims that his Eighth Amendment rights were violated by the inadequate health care he received. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

*Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

      The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In this case, Plaintiff claims that Defendant Comfort had him x-rayed while in chains, so that the results were not as clear as they could have been. Plaintiff also claims that when he questioned Defendant Comfort about the results of his x-rays, she told him that he had a shoulder deformity and that if Naproxen did not work, he could have a steroid injection. Plaintiff was given a copy of his x-rays, which showed a "type III acromion which causes mild narrowing of the supraspinatus outlet and may give rise to mild impingement." Plaintiff was also examined by an optometrist for complaints of eye pain and visual flashes. The optometrist examined Plaintiff and found no damage to his eyes. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65

(6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff claims that his due process rights were violated when he was improperly designated as a STG II member because his tattoos were wrongly found to be gang related. Plaintiff contends that the tattoos were actually based on song lyrics, as well as on verses from the Bible. However, the Sixth Circuit has held that:

> "an increase in security classification, such as being classified as a[n] STG member", does not constitute an "atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *See Moody,* 429 U.S. at 88 n. 9, 97 S.Ct. 274 (rejecting a prisoner's argument that a pending warrant and detainer adversely affected his prison classification and qualification for institutional programs because not "every state action carrying adverse consequences for prison inmates automatically activates a due process right"); *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (holding that "[n]either, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system," and noting that the fact "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules"); *but see Wilkinson v. Austin,* 545U.S. 209, 125 S.Ct. 2384, 2389, 2394, 162 L.Ed.2d 174 (2005) (holding that transfer to a "supermax" prison "imposes an atypical and significant hardship under any plausible baseline" because "[conditions] at [the prison] are more restrictive than any other form of incarceration in Ohio").

*Harbin-Bey v. Rutter*, 420 F.3d 571, 577 -578 (6th Cir. 2005).

Finally, Plaintiff states that as a Rastafarian, he requires a "natural" diet. Defendant Snyder told him that the cost of feeding him in accordance with his faith would be too expensive. However, Plaintiff also alleged that he was receiving a vegetarian diet as required by his religious

beliefs. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). The court concludes that this claim is entirely conclusory and is properly dismissed.

Plaintiff claims that on April 19, 2010, Defendant Brommenschenkel took a letter and health care request from Plaintiff's cell. Plaintiff claims that he never received a response from either item and asserts that Defendant Brommenschenkel must not have sent the items. Plaintiff also claims that while confined at AMF, he has not received much of the mail sent to him by his family. Plaintiff also states that one person told him that she had received an empty envelope from Plaintiff. Plaintiff concludes that prison officials must have been interfering with his mail.

A prisoner retains those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir.1986) (*quoting Pell v. Procunier,* 417 U.S. 817, 822); *see Turner v. Safley,* 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction

justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (*citing Pell,* 417 U.S. at 822-823; *Procunier v. Martinez,* 416 U.S. 396, 412 (1974)).

In this case, Plaintiff filed a grievance regarding the alleged interference with his mail. In response to that grievance, Defendants Karppinen and LeClaire stated that Plaintiff's mail had been properly sealed by prison staff and that once it left the prison, it was no longer the responsibility of the facility. As noted above, Plaintiff's contention regarding his mail is based solely on the fact that he did not receive responses to his mail on certain occasions and that one person stated that she received an empty envelope from him. Plaintiff fails to allege any specific facts supporting a finding that any particular named Defendant actually interfered with his mail. The court concludes that Plaintiff's claims regarding his outgoing mail are purely speculative and conclusory. Therefore, the court will dismiss those claims.

Plaintiff claims that Defendants violated his right of access to the courts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL

58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

Further, in order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any

other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Where, as here, "the access claim . . . looks backward,[1] the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415. "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

In this case, Plaintiff claims that Defendant Karppinen refused to give him needed photocopies in habeas case No. 1:98-cv-557, which prejudiced his attempt to file a second and / or

---

[1]Backward-looking claims "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims . . . is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Christopher*, 536 U.S. at 414 (footnotes omitted). In contrast, the "essence" of a forward-looking claim "is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413.

successive habeas corpus petition. However, as noted above, Plaintiff's motion to file a second and / or successive petition was actually denied because Plaintiff failed to offer any evidence that would prove that he was factually innocent of the crime for which he was convicted. *West v. Withrow*, No. 1:98-cv-557 (W.D. Mich. 2001) (docket #48). Therefore, Plaintiff was not prejudiced by Defendant Karppinen's conduct.

Plaintiff also claims that some of the legal materials that came up missing after his transfer were necessary to show that he was entitled to file a second / successive habeas corpus petition for a conviction in the early 1990s. Plaintiff claims that the Sixth Circuit Court of Appeals granted him an extension of time to request permission to file a second / successive habeas corpus petition. Plaintiff was given until September 20, 2010, to file the requisite application. Plaintiff states that the cost of obtaining new copies of his record in the underlying case amounted to more than $2000.00, which he could not afford and Plaintiff's motion to file a second / successive petition was denied on August 11, 2011. However, Plaintiff fails to allege the details of his planned motion to file a second / successive petition, or to explain why the missing materials were required to file the motion. Therefore, Plaintiff has failed to describe "the underlying cause of action," as required by the Supreme Court in order to show the requisite prejudice from an alleged denial of access to the courts. *Christopher*, 536 U.S. at 415 (citing *Lewis*, 518 U.S. at 353 & n.3).

Finally, the court notes that Plaintiff's claim that upon his transfer into AMF, he was assaulted by Defendants Truesdell and Koskinen[2], and was deprived food by Defendants Dove,

---

[2]Because "Unknown Party #3" cannot be identified or served, this individual is not properly a party to this action.

Erkkila, Brommenschenkel, Hapaala, Minnerick, and Joyal for a period of nearly four days are non-frivolous and may not be dismissed on initial screening.

## Motion for Preliminary Injunction

The court notes that Plaintiff is also seeking an preliminary injunction requiring the MDOC to pay the copy fees to various courts in order to replace Plaintiff's missing legal documents, as well as an order releasing Plaintiff to the general population. The Sixth Circuit has explained that a court confronted with a request for injunctive relief must consider and balance four factors:

1.  Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2.  Whether the movant has shown irreparable injury.

3.  Whether the preliminary injunction could harm third parties.

4.  Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Ass'n. v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). *See also*, *Frisch's Restaurant Inc. v. Shoney's*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Ardister v. Mansour*, 627 F.Supp. 641 (W.D. Mich. 1986).

Moreover, where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2nd Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

-22-

As noted above, Plaintiff's access to courts claims and due process claims regarding his missing legal property are properly dismissed for failure to state a claim. In addition, Plaintiff has no right to a particular security classification. Because Plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, Plaintiff's motion for a temporary restraining order and preliminary injunction will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Unknown Parties ##1-11, Patrikus, Ahola, Barry, Bellenger, Bemis, Borgen, Bouchard, Warden Capello, Comfort, Curley, Delene, Corrections Officer [female] Dewar, Assistant Resident Unit Supervisor [male] Dewar, Dube, Etelamaki, Goodreau, Gransinger, Hammel, Heyns, Hieteko, Hill, Holma, Huthaa, Jacobson, Jondreau, Karppinen, Kulie, LaChance, LeClaire, Lake, Macintyre, McCann, Martin, Meyers, Morgan, Petajaa, Place, Perry, Rule, Sackett, Skytta, Snow, Tollefson, Snyder, Tribbley, Turner, Wealton, Walden, Wickstrom and Yankovich will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Truesdell, Koskinen, Dove, Erkkila, Brommenschenkel, Hapaala, Minnerick, and Joyal.

An Order consistent with this Opinion will be entered.

Dated:  _____11/14 /2013_____    _____*/s/ R. Allan Edgar*_____
                                R. Allan Edgar
                                United States District Judge

-23-